BARNES & THORNBURG LLP

41 S. High Street
Suite 3300
Columbus, OH 43215-6104 U.S.A.
(614) 628-0096
Fax (614) 628-1433

www.btlaw.com

March 20, 2020

Honorable Rebecca Rutherford
United States Magistrate Judge
United States District Court for the Northern District of Texas
1100 Commerce Street
Room 1376A
Dallas, Texas 75242

**Transmittal Letter- Filing in Case No. 3:20-mc-00020-B-BT**

Dear Magistrate Judge Rutherford,

Please allow this letter to serve as the transmittal letter under the referral order in this matter. Attached, and pursuant to your orders regarding this matter, please find a Joint Status Report Regarding Motion to Quash Subpoena to Joseph Krause in the above matter, and the exhibits thereto.

Please let me know if you have any questions. Thank you.

Sincerely,

Robert C. Folland

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

|  |  |  |
|---|---|---|
| SCOTT H. KORN *and* ARLENE KORN, | : : : | Case No. 3:20-mc-00020-B-BT |
| Plaintiffs, | : : : |  |
| v. | : : : |  |
| CALIBER HOME LOANS, INC. and LSF9 MASTER PARTICIPATION TRUST, | : : : |  |
| Defendants. | : : |  |

### JOINT STATUS REPORT REGARDING MOTION TO QUASH SUBPOENA TO JOSEPH KRAUSE

Pursuant to the Court's February 28, 2020 order, as clarified on March 13, 2020, Plaintiffs Scott H. Korn and Arlene Korn ("Plaintiffs") and Defendants Caliber Home Loans, Inc. ("Caliber") and LSF9 Master Participation Trust (LSF9) (collectively "Defendants")and non-party Joseph Krause (collectively "Movants") hereby submit a joint status report regarding the Motion to Quash the subpoena to Mr. Krause.  Per the Court's order, the parties have conferred by telephone, as reflected herein, to attempt to resolve the objections to the subpoena, without success.  Therefore, Plaintiffs and Defendants separately present their arguments and authority herein.

**A. The Discovery Conference**

The Court ordered the parties to participate in a telephonic discovery conference, on or before March 18, 2020, regarding the Motion to Quash.  That conference was held on March 4, 2020 and lasted approximately 15 minutes.  An additional conference was held on March 17, 2020, which lasted about 15 minutes.  These conferences were in addition to prior communications, both in-person and via email, in an attempt to resolve the issues raised in the Motion to Quash.

On behalf of Defendants, attorney Robert C. Folland, lead counsel in the underlying matter in the Eastern District of Pennsylvania, and admitted Pro Hac Vice in this case, participated in the telephonic discovery conference. Mr. Folland will participate in any hearing on the Motion to Quash on behalf of Defendants along with local counsel Thomas Haskins, to the extent a hearing is rescheduled.  On behalf of Plaintiffs, attorney Michael Duffy participated in the first telephonic discovery conference and local counsel, Jim Hunter Birch participated in the second.  Plaintiffs' local counsel Jim Hunter Birch will participate in any hearing on the Motion to Quash on behalf of Plaintiffs to the extent a hearing is rescheduled.

### B.  Matters Resolved by Agreement and Matters to Be Heard and Determined

The parties were unable to resolve any of the issues raised in the Motion to Compel.  The parties do agree that there is no need to transfer the motion to the Eastern District of Pennsylvania for determination.

Plaintiffs continue to seek documents and testimony from Mr. Krause pursuant to the subpoena, and specifically related to Mr. Krause's role in settlement negotiations with Plaintiffs and his role in assisting Caliber in obtaining a property appraisal that Plaintiffs contend was performed in conjunction with those settlement negotiations and in the performance of the 2010 Settlement Agreement between the parties.

Defendants contend that the subpoena seeks information that is both irrelevant and privileged, and that Mr. Krause has no relevant, non-privileged knowledge concerning this matter and therefore that the subpoena be quashed in its entirety.

### C.  Explanation of Why an Agreement Could Not Be Reached- Plaintiff's Position

Plaintiffs oppose Defendants' motion to quash. Contrary to the arguments set forth in the moving papers, the subpoena in question appropriately seeks the production of

information and documents relevant to the underlying dispute among the parties. Moreover, the movants have failed to carry their substantial burden in attempting to prove that the subpoena would create an undue burden. Furthermore, even if some legitimately privileged materials were to fall within the scope of the subpoena, the appropriate course of action would not be to quash the subpoena, but simply for Mr. Krause to so state in responding to the subpoena and produce an accompanying privilege log identifying such materials. Accordingly, the Motion to Quash should be denied for the reasons set forth in this section below.

1. **Those Seeking to Quash a Subpoena Bear the Burden of Proof and Must Make a Detailed, Particularized Showing to Justify Quashal.**

Federal Rule of Civil Procedure 45 "explicitly contemplates the use of subpoenas in relation to non-parties" and governs subpoenas served on a third-party, such as Mr. Krause, as well as motions to quash, modify or compel compliance with such a subpoena. *See Isenberg v. Chase Bank USA, N.A.*, 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009). Where a subpoenaed party asserts undue burden, as Mr. Krause does here, that party has the burden of proof to demonstrate that compliance with the subpoena would be unreasonable and oppressive. *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998).

The person opposing the discovery is required show how the requested discovery is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See SEC v. Brady*, 238 F.R.D. 429, 437-38 (N.D. Tex. 2006); *Merrill v. Waffle House, Inc.*, 227 F.R.D 475, 477 (N.D. Tex. 2005). *See also In re Tera Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) ("[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.").

**Joint Status Report on Motion to Quash      3**

**2.   Movants Have Failed to Carry Their Burden in This Case.**

The sole evidence presented by the movants is a short declaration of the third-party subpoena recipient himself, Joseph Krause.  Mr. Krause's declaration falls far short of what is required to justify quashing the subpoena.  Rather than offering a particular and specific demonstration of facts, Mr. Krause has instead presented the Court with a self-serving declaration that is short on facts and long on conclusory language.  Moreover, the declaration only seeks to address a select few categories of the documents requested in the subpoena and ignores the rest. In short, it provides no persuasive justification for quashing the subpoena in its entirety.

a.  The Subpoena Seeks Information Relevant to Plaintiffs' Claims against Defendants.

In support of their Motion, Movants make the fundamentally incorrect assertion that Plaintiffs are seeking information that is not relevant to their claims.  That assertion is fundamentally inaccurate.  As detailed in Plaintiffs' Amended Complaint in the underlying action, Scott H. Korn and Arlene A. Korn v. Caliber home Loans, Inc., Civil Action No. 19-226 (United States District Court of the Eastern District of Pennsylvania, Philadelphia Division), which is attached as Exhibit 3 to the Motion to Quash (Dkt # 1-4), Plaintiffs and Caliber were engaged in settlement negotiations in 2017 relating to the Defendants' prior breach of a Settlement Agreement entered into between Plaintiffs and a predecessor in interest to Caliber.  The parties agreed that Caliber would obtain an independent appraiser to value the property at issue.  That value was to be used as the starting point for further negotiation.  *See* Amended Complaint ¶¶ 19-20.  Rather than obtaining an independent valuation of the property, Caliber and/or its agents injected itself into the valuation process and exerted pressure on the property appraiser to provide an inflated value for the property which would work to Caliber's ultimate financial advantage and harm the Plaintiffs.  *See* Amended Complaint ¶¶ 25-28.

**Joint Status Report on Motion to Quash        4**

It is essentially undeniable that these things occurred precisely as alleged by Plaintiffs. The proof is in writing in the exhibits to Plaintiffs' Amended Complaint where the person charged with developing an independent, objective value for the property admits to the property owner that he has been pressured to increase the value. *See* Exhibit B to the Amended Complaint ("I don't have the actual report showing the 1,19 but the email below is what they sent me to change it to the current [$1.4 million]." There is no doubt that he knew that what was going on was fundamentally wrong and dishonest. *See id.* ("Please do not share this email with anyone. This is for your information only. I could lose my license."). Later, when it became known that he had told the homeowner about the deception, he was retaliated against. *See* Exhibit C to the Amended Complaint. Representative examples including the following: ("I normally get like 20 orders a week and I got 2 so far") ("This is my biggest client and makes up about 70% of my business and earnings.") ("now I'm under investigation").

Under Pennsylvania law, which controls the  underlying action, every contract imposes on each party a duty of good faith and fair dealing in its performance and its enforcement. *See Onal v. BP Amoco Corp.*, 275 F. Supp. 2d 650, 659 (E.D. Pa. 2003). Plaintiffs allege that the Defendants are the successors in interest to the 2010 Settlement Agreement between Countrywide. The information sought through the subpoena to Krause is relevant to several aspects of the Plaintiffs' claims, including whether the Defendants honored the 2010 Settlement Agreement and acted in good faith in their performance and enforcement of it. Clearly, the sort of conduct where a contracting party would agree to obtain an independent, objective property valuation and then seek to surreptitiously and unilaterally pressure the appraiser to alter the result of the valuation in favor of that party would breach the covenant of good faith and fair dealing, and movants cannot plausibly maintain otherwise.

**Joint Status Report on Motion to Quash        5**

All of the allegations discussed herein are incorporated into Plaintiffs' breach of contract claim. *See* Amended Complaint ¶ 35.  Thus, given the nature of Plaintiffs' claims, the information they seek through the subpoena is reasonable and relevant.

    b.  Movants' Claims of Privilege Are Unavailing.

As Associate General Counsel for Caliber, Mr. Krause cannot legitimately maintain that communications between himself or others at Caliber and third-party vendors or those with whom they are affiliated, such as an appraiser, are protected by the attorney-client privilege.  Perhaps there are some internal communications at Caliber that fall within the legitimate scope of privilege but, even if so, it is not reasonable for that to cause the entire subpoena to be quashed.  Instead, Mr. Krause should simply delineate any legitimately privileged documents in a privilege log while producing other non-privileged material and documents. Fed. R. Civ. Pro. 45(e)(2)(A) establishes the process for claiming privilege when responding to a subpoena:

> (2) *Claiming Privilege or Protection.*
> (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
> (i) **expressly make the claim; and**
> (ii) **describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.** (emphasis added.)

The Krause Declaration and the Movant's Motion do not even attempt to comply with that procedure.  There are twenty-three categories of document requests that accompany the subpoena in question.  Even if the movants were able to demonstrate legitimate and detailed objections to some limited number of them (which they have not), the appropriate remedy would not be a quashal of the subpoena but only a limited judicial modification of the scope of the subpoena.  This is plainly what the law favors.  *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) ("Generally, modification of a subpoena is preferable to quashing it outright.").

**Joint Status Report on Motion to Quash      6**

Movants, likewise, ignore the plain language of the Rules of Evidence in an effort to support their motion.  Contrary to what Movants imply, Federal Rule of Evidence 408 does not bar the discovery or production of settlement-related communications.  In fact, it only serves to limit the ultimate admissibility of such evidence in certain circumstances while permitting many exceptions.  It contains no bar or limitation on discovery.  *See, e.g.*, *Hyde & Hyde, Inc. v. Mount Franklin Food, LLC*, No. 11-08, 2012 WL 12862826, at \*2 (W.D. Tex. Jan. 6, 2012) ("… Rule 408 does not render settlement discussions undiscoverable merely by making them inadmissible."); *Clark v. Experian Info. Solutions*, No. 03 C 7882, 2006 WL 626820, at \*2 (N.D. Ill. Mar. 8, 2006) ("Rule 408 does not create any category of documents that is off limits from discovery.  Rather, Rule 408 creates a narrow exclusion from admissibility as evidence.").  Further undermining the Movants' position is the axiom of Federal Rule of Civil Procedure 26(b)(1) which provides "Information within the scope of discovery need not be admissible in evidence to be discoverable."

The Movants' reliance on 42 Pa.C.S.A. §5949(a), the Pennsylvania mediation statute, is likewise misplaced.  The testimony and documents sought from Mr. Krause relate to Caliber's efforts to influence the appraisal of the Plaintiffs' home in connection with a dispute under and performance of the 2010 Settlement Agreement with Caliber's predecessor in interest.  At the time, the parties were not engaged in an active and ongoing "mediation" with a third-party mediator which is required for the attachment of any mediation privilege. See 42 Pa.C.S.A. § 5949(c).  The documents sought through the subpoena also would not constitute "Mediation Communications" or "Mediation Documents" under Section 5949(c).

**3. Conclusion**

**Joint Status Report on Motion to Quash        7**

The Movants have failed to meet their burden and have provided no persuasive reason for quashing the Plaintiffs' third-party subpoena to Mr. Krause.  No facts have been presented which justify a finding that the subpoena presents an undue burden.  Movants have not asserted that Mr. Krause would incur any excessive expense or other burden in responding to the subpoena.  They have not asserted that the time period covered by the request is too broad nor that the breadth of the requests is excessive nor that the requested documents have not been described with appropriate particularity.  It simply appears that Mr. Krause does not wish to respond to the subpoena.  That is not a valid reason to quash it.  Any legitimate issues that implicate a valid privilege can be adequately dealt with through the production of a privilege log.  Accordingly, the Court should deny the Motion to Quash.

### D.  Explanation of Why an Agreement Could Not Be Reached- Defendants' and Mr. Krause's Position

Defendants move to quash a subpoena issued to Mr. Krause for a deposition in Dallas, Texas, or in the alternative, for a protective order barring the deposition. *See* Krause Subpoena, Dkt. 1-2. As the forum for the proposed deposition, this Court is the appropriate venue for the Motion. Civ. R. 45(d)(3)(A); Civ. R. 26(b)(1).

Mr. Krause is an in-house attorney for Caliber. Mr. Krause has had no involvement with Plaintiffs other than in his role as an attorney providing analysis and legal advice to his client in trying to resolve existing litigation, and thus possesses no non-privileged knowledge regarding this matter. Furthermore, the subpoena seeks information related to Plaintiffs' previously dismissed claims and wholly unrelated to Plaintiffs' sole pending claim.

I.       Background

Caliber is the loan servicer for LSF9, which is the holder of Plaintiffs' promissory note, and the assignee of Plaintiffs' mortgage. LSF9 filed a foreclosure action against Plaintiffs in

Montgomery County, Pennsylvania on or about April 11, 2017. *See* Foreclosure Complaint, Dkt. 1-3. Shortly after filing that action, settlement negotiations ensued between the Korns and Caliber regarding a possible resolution of that foreclosure case. *See* District Court Complaint, ¶ 19, Dkt. 1-4. Plaintiffs allege that "[t]o aid the parties in the settlement process, the parties agreed that Caliber/LSF9 would obtain an independent appraiser to value the Property. Said value would be used as the starting point for further settlement discussions." *Id.*, ¶ 20. Specifically, Plaintiffs claimed that Mr. Krause [misspelled as Mr. Krouse], who Plaintiffs noted was "an Associate General Counsel for Caliber, scheduled an appointment for Maddrey to come and inspect the Property." *Id.*, ¶ 24. Plaintiffs then allege that, after that appraisal, "Caliber/LSF9 were not satisfied with the report and had asked Maddrey to increase the Property value significantly." *Id.*, ¶ 26. Based in part on these allegations, Plaintiffs then filed a complaint against Caliber in a separate action in Montgomery County, Pennsylvania, which Caliber removed to the Eastern District of Pennsylvania (the "District Court"). *Id.*, ¶¶ 3-4. Plaintiffs then filed an amended complaint after removal. *See generally Id.*

Plaintiffs asserted five causes of action against Defendants—breach of contract, fraudulent misrepresentation, negligent misrepresentation, civil conspiracy, and violation of the Fair Credit Extension Uniformity Act ("FCEUA"). *See generally Id.* Plaintiffs were very clear about the bases for each cause of action. As to breach of contract, Plaintiffs claimed to have entered into a prior settlement agreement with a prior loan servicer in 2010, which Plaintiffs claim is binding on Caliber and LSF9. *Id.*, ¶¶ 36-37. Plaintiffs further alleged that Caliber breached that settlement agreement in its handling of Plaintiffs' loan, specifically as to the amounts owed under the loan. *Id.*, ¶ 39. Plaintiffs' breach of contract claim never referenced the 2017 appraisal with which Mr. Krause was purportedly involved. *Id.*, ¶¶ 35-42. On the other hand, Plaintiffs' claims for fraudulent

misrepresentation and negligent misrepresentation were both explicitly based on the 2017 appraisal. *Id.*, ¶¶44-51, 54-61. In short, Plaintiffs' Complaint only mentions Mr. Krause, or the 2017 appraisal, in relation to Plaintiffs' fraud and misrepresentation claims. *Id.*, ¶ 24 (referencing Mr. Krause), ¶¶ 43-62. Plaintiffs' fraud and misrepresentation claims were based on two central allegations—first, that Caliber had secretly asked the appraiser, Gerard Maddrey, to significantly increase the appraisal value of the property, and second, that Caliber threatened to take work away from Mr. Maddrey if he did not comply with this purported scheme. *Id.*, ¶ 32. On September 30, 2019, the District Court dismissed all of Plaintiffs' fraud and misrepresentation claims, leaving only the claim breach of the purported 2010 settlement agreement. *See generally* Motion to Dismiss Order, Dkt. 1-5.

Despite the District Court's ruling on the Motion to Dismiss, Plaintiffs' subpoena to Mr. Krause is focused on the 2017 appraisal, which, according to Plaintiffs was undertaken as part of settlement negotiations between Plaintiffs and Defendants and explicitly seeks no fewer than 10 categories of documents related to the 2017 appraisal. Krause Subpoena, pgs. 15-16, ¶¶ 3-10, 14-15, Dkt. 1-2. The subpoena also seeks information, from Caliber's counsel, concerning Caliber's compliance with applicable laws, Caliber's document retention policies, and Caliber's efforts to preserve and gather documents in response to Plaintiffs' discovery requests in this case. *Id.*, pgs. 16-17, ¶¶ 16, 20-22. Defendants seek to quash the subpoena to Mr. Krause, or, in the alternative, for a protective order shielding Mr. Krause from the subpoena, because the subpoena relates to Plaintiffs' dismissed claims and because it seeks privileged documents and information from Mr. Krause.

II.     Legal Standard

**Joint Status Report on Motion to Quash     10**

A court must quash or modify a subpoena when that subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Civ. R. 45(C)(3)(A)(iii)-(iv). This protection applies to subpoenas for documents as well as subpoenas seeking witness testimony. *Id.* The target of a subpoena has standing to seek to quash the subpoena, as does a party when the party "has a personal right of privilege in the subject matter of the subpoena or a sufficient interest in it." *Booth v. City of Dallas*, 312 F.R.D. 427, 430 (N.D. Tex. 2015).

Discovery is generally limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…" Civ. R. 26(b)(1). A court must limit the frequency or extent of discovery if "…the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Civ. R. 26(b)(2)(C). Furthermore, either a party or a person from whom discovery is sought may move for a protective order. Civ. R. 26(c)(1). A court can issue a protective order, including forbidding certain discovery if, among other reasons, the discovery is annoying, embarrassing, oppressive or if it imposes an undue burden. Civ. R. 26(c)(1).

III.    The Court Must Quash the Subpoena or Issue a Protective Order

The subpoena, like all discovery, is limited to "any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Discovery outside that scope is prohibited. Civ. R. 26(b)(2)(C). A protective order can be granted, among other reasons, when it would create an undue burden, and courts can limit discovery which is duplicative. Civ. R. 26(c)(1); Civ. R. 26(b)(2)(C). A court must quash or modify a subpoena when that subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Civ. R. 45(C)(3)(A)(iii)-(iv). The subpoena issued by Plaintiffs is plainly irrelevant to Plaintiffs' sole remaining claim, and Plaintiffs' explanation of the purported

relevance of the subpoena fails to change that, while also confirming that the subpoena seeks privileged or confidential information.

The application of attorney-client privilege to this matter is governed by Pennsylvania law because Plaintiffs' claims, including the sole remaining claim for breach of contract, were brought under Pennsylvania law. *Southeastern Penn. Transp. Auth. v. Caremarkpcs Health, L.P.*, 254 F.R.D. 253, 257 (E.D. Pa. 2008). Under Pennsylvania law, the elements of attorney-client privilege are: "1) The asserted holder of the privilege is or sought to become a client, 2) The person to whom the communication was made is a member of the bar of a court, or his subordinate, 3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort, 4) The privilege has been claimed and is not waived by the client." *Newsuan v. Republic Services, Inc.*, 213 A.3d 279, 284-285 (Pa. Super. Ct. 2019). As long as the communication falls under these provisions a communication between a corporate client and its in-house counsel is privileged and subject to protection. *Southeastern Penn. Transp. Auth. v. Caremarkpcs Health, L.P.*, 254 F.R.D. 253, 257-258 (E.D. Pa. 2008) (internal citations omitted). Furthermore, the privilege extends to communications, for purposes of obtaining legal counsel, between in-house counsel and company personnel, and remain privileged even if the information is later relayed "to other employees or officers of the corporation on a need to know basis. Only when the communications are relayed to those who do not need the information to carry out their work or make effective decisions on the part of the company is the privilege lost." *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997).

Because of the importance of the attorney-client privilege, and the significance of attorney-client privilege issues, subpoenas directed to the opposing party's attorney are subject to their own standards. The practice is generally disfavored by the Fifth Circuit. *In re Matter of Subpoenas Served on Collins*, No. A-14-CV-934 LY, 2014 WL 12586370, at *3 (W.D. Tex. Nov. 7, 2014); *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999). Courts have quashed the deposition unless the party seeking the deposition can show that the information is non-privileged and relevant to the claims in the case. *Collins*, 2014 WL 12586370, at *3; *Nat'l W. Life Insurance Co. v. W. Nat'l Life Ins. Co.*, 2010 WL 5174366, at *4 (W.D. Tex. Dec. 13, 2010). In fact, the Fifth Circuit uses a three part test to review the propriety of deposing counsel for one of the parties, under which the deposition is barred unless "(1) no other means exist to obtain the information, (2) the information sought is relevant and non-privileged, and (3) the information is crucial to the preparation of the case." *Collins*, 2014 WL 12586370, at *3; *Nguyen v. Excel Corp.*, 187 F.3d 200, 208 (5th Cir. 1999); *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). Importantly, the *Shelton* standard was developed, and initially applied, to an-in house counsel that "had nothing to do with this lawsuit except to represent her client." *Shelton*, 805 F.2d at 1330. The same restrictive standard applies to attempts to force attorneys to produce documents. *Collins*, 2014 WL 12586370, at *3. Furthermore, courts have quashed subpoenas to attorneys for an opposing party, in their entirety, based on a "concern[] that the vast majority of the documents requested […] are privileged." *Collins*, 2014 WL 12586370, at *3.

Plaintiffs' subpoena to Mr. Krause does not come close to meeting the *Nguyen*/*Shelton* test for when parties may take discovery from the opposing party's counsel. The *Nguyen*/*Shelton* test applies to Mr. Krause because, like the in-house attorney in *Shelton*, Mr. Krause had nothing to do with this lawsuit except to represent his client. Mr. Krause is a lawyer, licensed to practice law in

Texas. Krause Declaration, ¶ 1, Dkt. 1-7. He is an Associate General Counsel for Caliber. *Id.*, ¶ 2. Thus, Caliber is his client, as is LSF9, for whom Caliber is the loan servicer and agent. *Id.*, ¶ 3. Mr. Krause's only involvement with Plaintiffs' loan was his attempt, as counsel for Caliber, to negotiate a settlement of the pending foreclosure matter. *Id.*, ¶¶ 4-6. Mr. Krause's only knowledge related to the appraisal arises from privileged communications with his client, Caliber. *Id.*, ¶¶ 7-9. Those communications and that knowledge are privileged, as would subsequent dissemination of those communications to Caliber employees on a "need to know" basis, yet that is precisely the information sought by the subpoena.

Plaintiffs fail the first *Nguyen/Shelton* factor because Plaintiffs cannot possibly show that no other means exist to obtain the information, as Plaintiffs have repeatedly sought from other sources the same information they now seek from Mr. Krause. Plaintiffs sought information related to the appraisal and the settlement negotiations from Defendants in written discovery. See e.g. Plaintiffs' Discovery Requests to Defendants, Interrogatory Nos. 3, 6, and 7, Requests for Production Nos. 1, 4-7, attached as Appendix Exhibit 1[1]. In response to Plaintiffs' written discovery requests, Defendants produced Plaintiffs' entire loan file, consisting of over 6,000 pages of documents. Plaintiffs then sought information from Defendants' corporate representative in deposition, which is identical to the information now sought from Mr. Krause. *Compare* Krause Subpoena, pgs. 15-17, ¶¶ 1-3, 5, 14-23, Dkt. 1-2; Caliber Corporate Representative Deposition Topics, ¶¶ 1, 3-5, 7-8, 10, 12-17, Dkt. 1-8. Beyond that, Plaintiffs have now served subpoenas on both Elite Premier Properties/Elite REO Services and Clear Capital, seeking essentially the same information sought from Mr. Krause. *See* Subpoena to Elite Premier Properties/Elite REO Services, attached as Appendix Exhibit 2; Subpoena to Clear Capital, attached as Appendix Exhibit

---

[1] Plaintiffs do not attach any exhibits to this filing, and therefore the Appendix Exhibits are solely the exhibits of Defendants.

**Joint Status Report on Motion to Quash      14**

3. For these reasons, even if the Court does not apply the *Nguyen/Shelton* test, the subpoena is improperly duplicative of other discovery, and should be barred on that basis.

Plaintiffs' subpoena also fails the second and third *Nguyen/Shelton* factors because it is not related to any pending claim or defense. As described in detail above, following the District Court's order, Plaintiffs' sole pending claim is for a breach of contract. *See generally* Motion to Dismiss Order, Dkt. 1-5. That claim, per the Complaint itself, and per the District Court's order on the Motion to Dismiss, had nothing to do with the 2017 appraisal. *Id.*, pgs. 2-3; District Court Complaint, ¶¶ 35-42, Dkt. 1-4. Even if the Court does not apply the *Nguyen/Shelton* test to this subpoena, the subpoena fails to meet even the low threshold of relevance under Civil Rule 26(b)(1) because it is unrelated to any claim or defense.

Beyond that, the factual allegations concerning the 2017 appraisal which formed the basis for Plaintiffs' fraud claims related to the 2017 appraisal have also already been debunked. The fraud claims related to the 2017 appraisal were based on the allegation that Caliber improperly influenced the appraiser to increase the appraisal and threatened to punish him if he did not comply. *See e.g.* District Court Complaint, ¶¶ 33, 45, Dkt. 1-4. But Caliber's corporate representative testified that no one at Caliber had any contact with the appraiser, Mr. Maddrey, or with his employer. Jamar Harris Deposition, 24:19-25:9, Dkt. 1-6. In addition, Mr. Maddrey himself testified that he did not recall his jobs being reduced in the aftermath of his 2017 appraisal of Plaintiffs' property and that his statements to Mr. Korn concerning the purported effect on his workload may not even have been true, but were instead an attempt to get Mr. Korn to stop harassing him. Maddrey Deposition, 134:3-135:9, attached as Appendix Exhibit 4. Plaintiffs' conspiracy theory has been both dismissed and debunked and Plaintiffs are not entitled to take discovery from Caliber's counsel on this issue.

**Joint Status Report on Motion to Quash        15**

Plaintiffs' strained attempts to relate this subpoena to their sole pending claim or defense only further reveal that the subpoena fails the second and third *Nguyen/Shelton* factors, both because the information sought is not critical to the preparation of Plaintiffs' case, and because the information sought is privileged and confidential. Now, after their claims for fraud based on the 2017 appraisal were dismissed by the District Court, Plaintiffs have changed their tune. Recently, during the deposition of Caliber's corporate representative, Plaintiffs' counsel confirmed that the deposition of Mr. Krause would focus on "settlement negotiations," and any potential communications Caliber had with Clear Capital, a vendor used by Caliber for appraisals. *See* Deposition of Jamar Harris, 23:15-23, Dkt. 1-6 (regarding Clear Capital's relationship with Caliber); 36:2-18 (regarding intent to depose Mr. Krause concerning Caliber's communications with Clear Capital and "settlement negotiations"). Plaintiffs now claim that the 2017 appraisal "concerns the claims that are pending regarding whether the settlement negotiations, which are required by the agreement of the parties, were performed in good faith and fair dealing by Countrywide as to that aspect of the mediation." *Id.*, 36:8-14. This is plainly inaccurate. However, beyond that, in seeking to depose a lawyer about his role in advising his client in settlement negotiations and overseeing communications his client had with Clear Capital, Plaintiffs clearly illustrates that the subpoena only seeks privileged and confidential information.

The information and documents sought by Mr. Krause are protected by attorney-client privilege and are confidential. As a result, the subpoena fails the *Nguyen/Shelton* test and, more broadly, must be quashed under Civ. R. 45(C)(3)(A)(iii). Mr. Krause's only knowledge related to 2017 appraisal and any related settlement negotiations arises from privileged communications with his client, Caliber. Krause Declaration, ¶¶ 7-9, Dkt. 1-7. Those communications and that knowledge would be privileged, as would subsequent dissemination of those communications to

**Joint Status Report on Motion to Quash       16**

Caliber employees on a "need to know" basis, yet that is precisely the information sought by the subpoena. Krause Subpoena, pgs. 15-17 ¶¶ 6, 16, 18, 19-23, Dkt. 1-2. Furthermore, Mr. Krause's communications with Plaintiffs, or any attorney representing Plaintiffs, would be protected from disclosure under Fed. R. Evid. 408 as settlement discussions, and under 42 Pa.C.S.A. § 5949(a) and Fed. R. Evid. 501 as mediation communications. 42 Pa.C.S.A. § 5949(a) ("Except as provided in subsection (b), all mediation communications and mediation documents are privileged. Disclosure of mediation communications and mediation documents may not be required or compelled through discovery or any other process."); *see e.g. Sheldone v. Pennsylvania Turnpike Com'n*, 104 F.Supp.2d 511, 517 (W.D. Pa. 2000) (Fed. R. Evid. 501 prevents the use of "all written and oral communications made in connection with or during" a mediation except for written settlement agreements or stipulations "for any purpose…") (internal citations omitted).

Herein, Plaintiffs seek to distance themselves from 42 Pa.C.S.A. § 5949(a) by arguing that Mr. Korn's communications at issue with the subpoena occurred before the parties engaged a mediator. In other words, Plaintiffs claim that Mr. Krause's testimony is related to the mediation when it suits them, when arguing for the relevance of his testimony to their breach of contract claim, but that it is not related to the mediation when it does not suit them—for purposes of the mediation confidentiality statute. Plaintiffs cannot have it both ways.

To the extent that Plaintiffs cite authority that, when applying Texas privilege law, Evid. R. 408 does not limit the production of documents, such an argument is contrary to the authority of the Eastern District of Pennsylvania that requires a heightened showing of relevance before requiring the production of settlement communications subject to Evid. R. 408. *Compare Hyde & Hyde, Inc. v. Mount Franklin Food, LLC*, No. EP-11-CA-08-FM, 2012 WL 12862826 (W.D. Tex. January 6, 2012) and *Dent v. Westinghouse*, No. 08-8311, 2010 WL 56054 (E.D. Pa. January 4,

2010). Finally, Caliber has not waived the privilege, and, through this Motion, is actively seeking to protect its privilege.

As demonstrated herein, the information sought from Mr. Krause is related to dismissed claims, has already been debunked, and is privileged. Furthermore, Plaintiffs have sought the same information from other sources, and therefore this subpoena is duplicative, and will unnecessarily harass and burden Mr. Krause.

Even if the Court rejects all other arguments raised by Defendants and Mr. Korn, the subpoena is also annoying, oppressive, and an undue burden. In evaluating whether an undue burden exists, two considerations are "relevance" of the material sought, and "the need of the party for the documents…" *American Federation of Musicians of the United States and Canada v. Skodam, LLC*, 313 F.R.D. 39, 44-45 (N.D. Tex. 2015). Courts also "give special weight to the burden on non-parties of producing documents to parties involved in litigation." *In re Matter of Subpoenas Served on Collins*, 2014 WL 12586370, at *2 (W.D. Tex. Nov. 7, 2014). With respect to attorneys, courts have found that a subpoena is unduly burdensome when there is no "genuine need" for the deposition and when it would be "extremely difficult […] to differentiate privileged matters from non-privileged matters." National Western Life Ins. Co. v. Western National Life Ins. Co., No. A-09-CA-711, 2010 WL 5174366 (W.D. Tex. Dec. 13, 2010). In this case, the documents and information sought are wholly irrelevant, privileged and duplicative, so it would be oppressive and an undue burden for Mr. Krause to have to produce documents or appear for a deposition in accordance with the subpoena.   Defendants have, in accordance with Civ. R. 37(c)(1) and the further requirements of this Court, conferred with Plaintiffs' counsel in an attempt to resolve this dispute, as detailed herein, to no avail.

IV.    Conclusion

**Joint Status Report on Motion to Quash       18**

For the reasons stated herein, the Court should quash the subpoena to Mr. Krause, or, in the alternative, issue a protective order barring the subpoena of Mr. Krause.

**E.  Transfer to Eastern District of Pennsylvania- Joint Position**

Plaintiffs agree with Defendants that, absent Mr. Krause's consent, this matter should not be transferred to the Eastern District of Pennsylvania. Mr. Krause does not consent to the transfer of this matter to the Eastern District of Pennsylvania. Since Mr. Krause resides in this District, the subpoena requests compliance in this District, enforcement in this District would not appear to disrupt proceedings in the issuing District Court, and the Motion is already pending here, judicial economy would be served by this Court deciding the issues presented.

Date: March 20, 2020

Respectfully submitted,

**For Plaintiffs,**

*/s/ Jim Hunter Birch*
Jim Hunter Birch
Texas Bar No. 00797991
Eric Carlson
Texas Bar No. 24100076
Quilling, Selander, Lownds, Winslett &
Moser, P.C.
2001 Bryan Street, Suite 1800
Dallas, TX 75201
214-880-1806 (Telephone)
214-871-2111 (Facsimile)
jbirch@qslwm.com
*Counsel for Scott and Arlene Korn*

**For Defendants,**

*/s/ Robert C. Folland*
Thomas Haskins
BARNES & THORNBURG LLP
2121 N. Pearl Street, Suite 700
Dallas, TX 75201
(214)-258-4200 (Office)
(214)-258-4199 (Facsimile)
Thomas.haskins@btlaw.com

Robert C. Folland (admitted PHV)
BARNES & THORNBURG LLP
41 South High Street, Suite 3300
Columbus, OH 43215
614-628-1429 (Office)
614-628-1433 (Facsimile)
Rob.Folland@btlaw.com

*Counsel for Defendants and non-party
Joseph Krause*