IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SCOTT H. KORN and<br>ARLENE KORN,<br><br>    Plaintiffs,<br><br>v.<br><br>CALIBER HOME LOANS, INC. and<br>LSF9 MASTER PARTICIPATION<br>TRUST,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 3:20-mc-00020-B-BT |

## MEMORANDUM ORDER

Defendants Caliber Home Loans, Inc. (Caliber) and LSF9 Master Participation Trust (LSF9), along with nonparty Joseph Krause (collectively, "Movants") have filed a Motion to Quash (ECF No. 1) a subpoena issued by the United States District Court for the Eastern District of Pennsylvania. For the reasons stated, the Motion is GRANTED in part and DENIED in part.

### Background

In 2006, Plaintiffs borrowed $3.15 million from Countrywide Home Loans, a/k/a America's Wholesale Lender (Countrywide), and Countrywide obtained a security interest in Plaintiffs' home as collateral. Movants' Ex. 3 at 2 (ECF No. 1-4). Multiple lawsuits regarding the loan ensued, resulting finally in a global settlement (the "settlement agreement") of the litigation between Plaintiffs and

1

Countrywide in 2010. *Id.* at 2-3. Countrywide sold Plaintiffs' loan, and LSF9 currently owns it. *Id.* at 3-4. Caliber is the loan servicer for LSF9. *Id.* at 4.

In 2017, LSF9 filed a civil action in Montgomery County, Pennsylvania to foreclose the lien on Plaintiff's home (the "foreclosure action"). Movants' Ex. 2 at 5, 7 (ECF No. 1-3). Shortly thereafter, Caliber, on behalf of LSF9, began settlement negotiations with Plaintiffs. According to Plaintiffs, the parties agreed to obtain an appraisal of the property to aid in those settlement negotiations. Movants' Ex. 3 at 5. Plaintiffs further allege that Krause—an in-house attorney for Caliber—scheduled the appraisal. *Id.* Plaintiffs contend that Caliber and LSF9 were not satisfied with the appraisal value and asked the appraiser to increase the value "significantly." *Id.* Plaintiffs filed a civil action against Caliber in Montgomery County, Pennsylvania, which Caliber removed to the Eastern District of Pennsylvania, and LSF9 intervened.

Plaintiffs allege in their Amended Complaint, the live complaint in the underlying action, that the 2010 settlement agreement is binding on Caliber and LSF9. *Id.* at 3. And, according to Plaintiffs, Caliber breached that settlement agreement in its handling of Plaintiff's loan. *Id.* at 4. While Plaintiffs brought four other causes of action in the Amended Complaint, all of Plaintiffs' claims, except this breach of contract claim, have been dismissed. Movants' Ex. 4 at 6 (ECF No. 1-5).

The subpoena at issue requires Krause to appear for a deposition in Dallas and to bring certain documents with him to the deposition. Movants' Ex. 1 at 1-2

(ECF No. 1-2). Movants seek to quash the subpoena because (1) it seeks privileged and confidential information; and (2) it seeks information that is irrelevant to the remaining breach of contract claim. Mot. 5. The Court ordered the parties to confer meaningfully in an attempt to resolve this discovery issue without court intervention. Order Requiring Joint Status Report (ECF No. 4). The parties were unable to resolve the issue. Accordingly, the Motion is ripe for determination.

## Legal Standards

Federal Rule of Civil Procedure 45 permits a litigant to serve a subpoena commanding a nonparty to, among other things, submit to a deposition and produce designated documents. Fed. R. Civ. P. 45(a)(1)(A)(iii), (a)(1)(C). "On timely motion, the court for the district where compliance [with the subpoena] is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

"Although several districts within the Fifth Circuit caution about the taking of in-house counsel and[/]or opposing counsel depositions, there is not an express prohibition thereon." *Premier Dealer Servs., Inc. v. Duhon*, 2013 WL 5720354, at *4 (E.D. La. Oct. 21, 2013). However, the Fifth Circuit itself has recognized that courts "disfavor[ ] the practice of taking the deposition of a party's attorney; instead, the practice should be employed only in limited circumstances." *Theriot*

3

*v. Par. of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999). The Fifth Circuit has impliedly endorsed the use of the three criteria enumerated in *Shelton v. American Motors Corporation*, 805 F.2d 1323, 1327 (8th Cir. 1986) to determine whether an attorney in a matter should be subject to deposition. *See Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999). Those criteria are: (1) that no other means exist to obtain the information; (2) that the information sought is relevant and nonprivileged; and (3) that the information is crucial to the preparation of the case. *Id.*

However, if an in-house attorney's role is more akin to a mere business advisor for a company rather than one actively involved in trial preparation, then the *Shelton* test does not apply. *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins.*, 2016 WL 3033544, at *5 (N.D. Tex. May 26, 2016). Thus, whether a party's in-house attorney is subject to deposition is often a two-step inquiry. First, a court must decide whether the attorney's role resembles that of a business advisor more than that of an attorney. If it does, then the attorney may be deposed, and *Shelton* does not apply. However, if it does not, then the *Shelton* criteria must be met for the attorney to be deposed.

However, a subpoena *duces tecum* served on opposing counsel is not evaluated under the *Shelton* criteria and should not be quashed in its entirety simply because it accompanies a deposition notice. *See Del-Wise v. Tex.Masters, Inc.*, 2011 WL 13254536, at *2 (S.D. Tex. Mar. 17, 2011) (holding that the first prong of *Shelton* requires the proponent of the discovery to consider serving opposing

4

counsel with "other discovery methods, such as requests for production or requests for admission" because "[t]hese other discovery methods do not involve the dangers of oral depositions, such as delay, disruption of the case, and harassment"); *Kravco Co. v. Valley Forge Ctr. Assocs.*, 1991 WL 274816, at *5 (E.D. Pa. Dec. 17, 1991) (finding *Shelton* inapplicable where subpoena duces tecum was directed toward categories of documents simply in attorney's possession rather than categories of documents attorney viewed as important and noting that "[i]t would be an overbroad reading of *Shelton* . . . to say that [it] cover[s] the contents of all firm files"). Indeed, Rule 45 provides:

> A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

Fed. R. Civ. P. 45(e)(2)(A). Blanket assertions of attorney-client privilege and attorney work product are not acceptable. *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982).

## Analysis

I. The *Shelton* criteria apply and counsel against taking Krause's deposition.

Krause's role in the foreclosure litigation is more like that of an attorney involved in trial preparation than that of a business advisor. In a declaration filed with the Joint Status Report, Krause states that he negotiated on behalf of Caliber with counsel for Plaintiffs in the foreclosure action regarding a possible settlement

of that action. Movants' Ex. 6 at 1 (ECF No. 1-7). He further notes that, in those negotiations, he "engaged as an attorney on behalf of Caliber analyzing and/or seeking to resolve the ongoing foreclosure litigation against the Korns," but that those negotiations did not result in a settlement, and the matter was then referred to outside counsel. *Id.* at 2. Plaintiffs object to Krause's declaration as "self-serving," but they offer nothing to contradict the facts as Krause stated them. Thus, on the record before it, the Court concludes Krause's direct role in negotiating a settlement of the foreclosure action on behalf of Caliber was that of an attorney involved in the foreclosure litigation rather than that of a business advisor. *See Mahindra & Mahindra Ltd. v. FCA US LLC*, 2019 WL 3295148, at *2 (E.D. Mich. July 18, 2019) (finding *Shelton* applicable where counsel, among other things, attended mediation on behalf of party-client); *Desert Orchid Partners, L.L.C. v. Transaction Sys. Architects, Inc.*, 237 F.R.D. 215, 220 (D. Neb. 2006) (finding *Shelton* applicable where attorney "was never trial counsel, [but] was involved with the defense strategy and the litigation of th[e] case and similar actions against the defendants").

The fact that Krause was directly involved in the foreclosure action rather than the underlying action and the fact that the foreclosure action was eventually referred to outside counsel are not dispositive given the nature of information Plaintiffs seek. Plaintiffs purportedly seek testimony from Krause regarding the settlement negotiations he conducted with Plaintiffs in the foreclosure action. Joint Status Report 2 (ECF No. 10) (JSR) ("Plaintiffs continue to seek documents

and testimony from Mr. Krause pursuant to the subpoena, and specifically related to Mr. Krause's role in settlement negotiations with Plaintiffs and his role in assisting Caliber in obtaining a property appraisal that Plaintiffs contend was performed in conjunction with those settlement negotiations and in the performance of the 2010 Settlement Agreement between the parties."), 4 (explaining that Plaintiffs seek information from Krause related to "settlement negotiations in 2017 relating to the Defendants' prior breach of a Settlement Agreement entered into between Plaintiffs and a predecessor in interest to Caliber"). Indeed, those settlement negotiations are the only topic about which Plaintiffs could obtain potentially relevant testimony from Krause. Krause states that his contact with Plaintiffs and their counsel was limited to potential settlement of the foreclosure action. Movants' Ex. 6 at 1. Because Plaintiffs seek testimony from Krause concerning his role in the foreclosure action as trial counsel, the *Shelton* criteria apply.

Plaintiffs do not argue that they have satisfied the requisite elements to depose their opponents' counsel. Rather, Plaintiffs argue that Movants have not met their burden to justify quashing the subpoena. The Court recognizes that it is ordinarily the movant's burden to establish that a subpoena should be quashed. *Wiwa v. Royal Dutch Petroleum*, 392 F.3d 812, 818 (5th Cir. 2004). However, in *Shelton*, the court held that, while opposing counsel is not absolutely immune from being deposed, the circumstances allowing such a deposition "should be limited to where *the party seeking to take the deposition has shown that* (1) no other means

7

exist to obtain the information other than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327 (emphasis added, and internal citation omitted).

Plaintiffs have not established that no other means exist to obtain the information other than deposing Krause. As discussed above, Plaintiffs seek information from Krause concerning the settlement negotiations of the foreclosure action and concerning the property appraisal that was obtained in aid of those negotiations. Plaintiffs have already sought information related to the negotiations and the appraisal from Caliber and LSF9 in written discovery. JSR Ex. 1 at 7-8, 20-21 (ECF No. 10-1). Movants state—and Plaintiffs do not dispute—that in response to such requests, Caliber and LSF9 produced to Plaintiffs their entire loan file. Moreover, Plaintiffs sought information from Caliber's corporate representative that is substantially similar to the information now sought from Krause. *Compare* Movants' Ex. 1 at 15-17, ¶¶ 1-3, 5, 14-23, *with* Movants' Ex. 7 at 6-7, ¶¶ 1, 3-5, 7-8, 10, 12-17 (ECF No. 1-8). Plaintiffs do not argue that no other means exist to obtain the information other than deposing Krause.

Plaintiffs also have not established that the testimony sought from Krause is nonprivileged. Indeed, Plaintiffs—erroneously placing the burden on Movants—have only argued that Movants have not demonstrated that the information sought is privileged. *Id.* at 6. Plaintiffs concede that "[p]erhaps there are some internal communications at Caliber that fall within the legitimate scope of privilege," but

argue that rather than quashing the entire subpoena, the Court should modify the scope of the subpoena to require only nonprivileged testimony. *Id*. As discussed above, *Shelton* places the burden on the proponents of the deposition. Moreover, simply limiting the scope of the subpoena does not mitigate the fact that depositions of opponents' attorneys "disrupt[ ] the adversarial system; lower[ ] the standards of the profession; add[ ] to the burdensome time and costs of litigation; and detract[ ] from the quality of the attorney client relationship." *Securus Techs., Inc. v. Glob. Tel*Link Corp.*, 331 F. Supp. 3d 633, 637-38 (N.D. Tex. 2017) (citing *Shelton*, 805 F.2d at 1327).

Because Plaintiffs have not shown that no other means exist to obtain the information sought except deposing Krause or that the testimony sought is nonprivileged, the Court pretermits discussion as to whether Plaintiffs have shown that the information sought is relevant and crucial to the preparation of the case. Krause should not be deposed because the three *Shelton* criteria are not satisfied.

## II. Krause must answer the subpoena *duces tecum.*

Movants contend that the documents Plaintiffs seek from Krause are subject to attorney-client privilege. Indeed, Krause states in his declaration that he "do[es] not possess any documents related to the Korns' loan other than the communications in which [he] engaged as an attorney on behalf of Caliber analyzing and/or seeking to resolve the ongoing foreclosure litigation against the Korns." Movants' Ex. 6 at 2. *See also Newsaun v. Republic Servs., Inc.*, 213 A.3d 279, 284-85 (Pa. Super. Ct. 2019) (stating that, under Pennsylvania law, the

9

elements of attorney-client privilege are: (1) the holder of the privilege is a client or potential client; (2) the person to whom the communication was made is a member of the bar; (3) the communication relates to a fact of which the attorney was informed by his client or potential client in confidence for the purpose of obtaining legal services or assistance in a legal matter; and (4) the privilege is not waived by the holder).

But this assertion does not excuse Movants from their general discovery obligations. Regarding any claim of privilege or work product protection, Krause must provide a privilege log that complies with Fed. R. Civ. P. 45(e)(2)(A), which requires that a person asserting attorney-client privilege "describe the nature of the documents, communications, or tangible things [not produced] in a manner that, without revealing information itself privileged or protected, will enable parties to assess the claim." Krause cannot meet his burden through conclusory statements on a privilege log that certain materials are privileged; rather, to be sufficient, the privilege log must set out, as to each document withheld: (1) attorney and client; (2) the nature of the document; (3) author and recipients; (4) the date the document was prepared or dated; (5) a general description of the subject matter of the document; and (6) the privilege or protection asserted. Krause must answer the subpoena *duces tecum* with a privilege log within 30 days of the date of this Order.

## Conclusion

For the foregoing reasons, Defendants' Motion to Quash (ECF No. 1) is GRANTED in part and DENIED in part. Plaintiffs are not permitted to depose Krause, but, to the extent Krause asserts that the documents Plaintiffs seek are subject to the attorney-client privilege, Krause must answer the subpoena *duces tecum* with a privilege log within 30 days of the date of this Order.

**SO ORDERED**.

March 30, 2020.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE